February 24th, 1909.

————o————

No. 4580.

(Court of Appeal, Parish of Orleans.)

J. E. CLEMENS VS. H. A. TESTARD.

ON MOTION TO DISMISS.

When a motion to dismiss fails to comply with the rules of this Court, it will not be taken up in limine, but the motion will be considered when the case is heard on the merits.

Appeal from Civil District Court, Division "D."

J. C. Wickliffe, for Plaintiff and Appellee.

W. McL. Fayssoux and J. Z. Spearing, for Defendant and Appellant.

ESTOPINAL, J. The motion herein fails to comply with the rules of this Court in that it was not "accompanied by three copies of a written or printed brief which has been served upon the opposing counsel. Under the circumstances we shall not pass on the motion *in limine*, but shall consider it when the case is heard on the merits.

The motion is therefore denied without prejudice.

November 9, 1909.

ON THE MERITS.

1. "The Court of the first instance, after an appeal has been taken, still has jurisdiction to pass upon the question of the illegality of the bond, and no appeal lies from an order of a District Judge decreeing the amount of a suspensive appeal bond to be too small, dismissing the appeal and ordering an execution to issue."

2. The questions of fact involved in this case are resolved in favor of the plaintiff.

ESTOPINAL, J. This was a suit by plaintiff to have declared null and void for non-execution a contract between him-

—177—

self and the defendant for the sale of an automobile and the return to him of two notes for one hundred dollars each, and the repayment to him of the sum of two hundred dollars ($200), paid cash to the defendant for the machine.

Plaintiff's petition sets forth that on or about March 27, 1907, he contracted with H. A. Testard (defendant), a dealer in automobiles, to buy a second-hand automobile for the price and sum of four hundred dollars ($400), two hundred dollars ($200) to be paid cash, and the balance of the purchase price to be represented by two notes for one hundred dollars ($100), each, payable in one and two months after their dates; that he gave his check for two hundred dollars ($200), and the two notes as per agreement, and received of the defendant an automobile which he avers said defendant representd as being in a good, serviceable condition, and fit to use.

Plaintiff avers that on the day set for the delivery of the machine the defendant telephoned him that the machine was broken and would not run, and that he would send it to plaintiff when it had been repaired; that it was not until April 14th, 1907, that the defendant announced to him that the automobile was in a good and proper condition to run; that the defendant sent the machine, with his own chauffeur, on that day to the office of plaintiff, who was to be taught how to operate same.

Plaintiff avers that on that day the automobile would not run; that it broke down and was in a dangerous condition and unsafe to operate, and that defendant's driver was compelled to take the machine back to the shop; that subsequently, on three other days, the defendant sent said automobile to plaintiff's office in charge of a driver (furnished by the defendant), who four times tried to operate same, failing each time, the fourth time the machine having broken down altogether, plaintiff and said driver being obliged to return home on a street car.

,Plaintiff avers that finally, on April 20th, 1907, he notified defendant that he had failed to comply with his contract and furnish him with said automobile in good condition and fit to operate, and notified defendant that he considered the contract at an end.

Plaintiff avers that he again wrote on the 30th of April, 1907, on the same lines, and finally, on May 1st, 1907, received a letter from the defendant, who stated that he considered he had complied with the contract, and that the machine was in his

garage, subject to the orders of and at plaintiff's risk.

The defendant tendered the general issue, coupled with the special defense that he had made no guarantee of the machine; that the car was a second-hand affair which had been sold to plaintiff at a very reasonable price, and on easy terms; that he represented the machine as being in *working condition* at the time of the sale, and that it was in such condition at that time; that the plaintiff had charge and operated the machine during an entire month, and that any trouble or injury to the same was caused by the inexperience of the plaintiff, who, defendant avers, operated it.

Judgment was rendered below in favor of plaintiff, and defendant appealed suspensively, furnishing a bond of three hundred dollars ($200). The judgment against defendant decreed the return of two hundred dollars ($200) cash, paid him by the plaintiff, and the return of the two notes for one hundred dollars ($100) each, given by the latter for the balance of the purchase price, making a total of four hundred dollars ($400), exclusive of interest.

Defendant was ruled into Court to show cause why his appeal should not be denied, and dismissed for insufficiency of the bond, which should have been something over six hundred dollars ($600), instead of three hundred dollars ($300).

On hearing the appeal was dismissed by the District Judge, who ordered execution to issue. Defendant's application to this Court for a writ of prohibition, directed to the judge of the lower Court, was dismissed, whereupon the defendant was granted an appeal from the interlocutory order of the district judge, dismissing his appeal, and this appeal is now pending.

There is also pending a devolutive appeal, taken by the defendant subsequently. Plaintiff sought to have both these appeals dismissed by this Court, but owing to the irregular manner in which the motion to dismiss these appeals were made, we refused to consider said motions *in limine,* and referred them to the merits.

It is clear that the suspensive appeal taken from the order of the District Judge, dismissing defendant's appeal, cannot be entertained.

In the first place it may not be doubted that the District Judge, by the granting of an appeal, does not divest himself of jurisdiction on questions affecting the sufficiency of the bond.

—179—

119 La. 549; 36 An. 751; 119 La. 1070; 8 Rob. 38.

On the question as to whether an appeal, either suspensive or devolutive, lies from the interlocutory order of the judge dismissing an appeal, our Supreme Court has frequently and uniformly held that such an appeal did not lie.

Our attention has been directed to a number of decisions. early and recent, but for the purposes of this opinion we will content ourselves with citing the case of Reynolds vs. Egan, No. 17, 250, of the docket of the Supreme Court, and not yet reported, in which the Court disposed of the identical point involved in the case at bar, and sustained contention of plaintiff here, that an appeal does not lie from order of the District Judge dismissing an appeal.

It is possible that this discussion is not necessary, in view of the fact that the defendant evidently appreciating the weakness of his position, practically abandoned his appeal first taken, and subsequently took a devolutive appeal from the original judgment of the lower Court. This last appeal is vigorously attacked by plaintiff on the ground that the transcript of said appeal bears the same number as the suspensive appeal taken from the order of the lower Court, dismissing the appeal, and that for that reason the devolutive appeal herein was not legally granted nor properly filed, and should be dismissed.

We fail to discover any merit in this contention. There can be no conflict or improper merging of these remedies since the suit is the same, and the parties identical from the very inception of these proceedings.

The cover of the transcript shows the *filing* by the Clerk, and this is a *filing* of every document under such cover, and properly under the same number.

The objection appears to us to be super-technical, and cannot be sustained, and we will therefore pass to the consideration of the merits of the case.

The testimony taken in this matter is very voluminous, and to attempt to quote at any length at all from it, would be to extend this opinion to a length beyond reason. We have stated the substantial averments of plaintiff's petition, and there can be no question that if the evidence in the record sustains him, he is entitled to a judgment annulling the sale.

Clements, the plaintiff, testifies that he was first approached by a Mr. Thurber, representing the defendant, and that subse-

quently the defendant (Testard), called to see him and offered to sell him an auto-car, *which he guaranteed to be in good serviceable condition.* Upon these representations plaintiff says that he gave his check for two hundred dollars ($200), and two notes aggregating two hundred dollars ($200), for the balance; that this was done on the 27th of March, 1907, and the car was to be delivered the next day, March 28th, 1907; that the defendant agreed to furnish at his own expense, a chauffeur, who would teach him (plaintiff) how to drive the car; that the car was not delivered on the 28th of March, 1907, as per agreement, plaintiff being informed on the morning of that day, by defendant or his agent, that the car had been broken some time during the night, and that it would take some time to fix it.

Plaintiff says he called at the defendant's garage to ascertain the trouble, and was told by Testard, Thurber, John Sutton (chauffeur), and the machinist in the defendant's employ that a negro had broken the car during the night, in trying to run it. Plaintiff says that he gave no permission to this negro to run the machine, and that the machine was not run on his account, and that the fact was that the machine had not been delivered to him. Plaintiff testifies that Testard and his manager told him it would require several days to make the necessary repairs to the car, and that when he complained Testard agreed to furnish another car for his use pending the repairs to the injured car, provided he, plaintiff, would pay the chauffeur, which was agreed to. Plaintiff says that he used the substituted car about 15 or 18 days, three times a day, and there was a little, but no serious, trouble in operating it; that some time about the 8th or 10th of April, 1907, he was informed that his car was now alright, and the car was sent him in charge of a chauffeur named Tester, a man highly praised by Testard and Thurber, for his expertness in handling automobiles.

Tester, says plaintiff, had great difficulty in running the car, which kept getting out of order whenever used, and finally had again to be laid up for repairs. When these last were completed, Tester, the chauffeur, took the car to plaintiff's home, and he and his wife entered and a start was made, but that when only a short distance beyond the Canal Street car barn the car began to fail, and shortly thereafter there was a crash, and the car came to a stop, and he and his wife came home in a street car. The automobile, on this occasion, had to be hauled

—181—

to the garage by another machine.

Plaintiff says that two or three days after the occurrence Mr. Thurber, Testard's manager, called and virtually admitted that the car was "in to the bad," and wanted to know if plaintiff would pay for having the car fixed, to which proposition he replied, that the car not having yet been delivered to him under the conditions made with Testard, he did not intend to pay for any repairs. Thereupon plaintiff wrote Testard the following letter:

New Orleans, La., April 20, 1907.

"Mr. H. A. Testard, 541 St. Charles Street, City:

Dear Sir—As you know, on March 27 you agreed to sell to me an autocar which you guaranteed to deliver in good serviceable condition, and I, on my part, gave you my check for $200 on account, and two notes for $100 each, due in one and two months from that date. I have definitely learned that you are unable to comply with this agreement. I am willing to believe that you thought the car was in good condition at that time, and that you have made every effort to do what you agreed. I am now convinced that the car was not in the condition at that time you supposed it to be, and that it cannot really be put in good serviceable condition unless practically rebuilt. In the few tests of the car which I witnessed, and which I believed were made by a thoroughly competent man, the car entirely failed to make good. Several times it came to a dead stop and it required a long time to get it to move enough to return to the garage. Upon the occasion of the last test it became completely disabled while traveling at low speed. I believe I have given you every opportunity you could reasonably ask, and as several days have elapsed since the collapse of the car, I had expected that you would notify me of your inability to comply with the terms of your agreement. I consider the call of your manager this morning a virtual notice to that effect. I wish to be fair in this matter, and while a substitute car was placed at my service during the time you were trying to put the autocar in good condition, in order to prevent the agreement being cancelled, I am willing to make what I feel is a liberal allowance and allow you to retain $50 of the amount paid you and you return to me the remainder of the deposit paid, with the two notes mentioned above, and your receipt for the amount men-

—182—

tioned. This amount, with the chauffeur's salary, which I have paid up to last Sunday, makes it cost me something like $70 for whatever pleasure I may have derived from the few days' use of an automobile.

"I expect to get a car, and I may, before long, make you a different proposition with this in view.

"Trusting that we may have other business relations which will be more satisfactory to both of us, and expressing my great regret at the failure of this deal, I am,

Yours very truly,

"Dict. Dr. C."

Plaintiff says that two or three days after receiving the above letter, Testard came to his office and told him that he (plaintiff) was mistaken about the car being in bad condition, that these little breakdowns did not amount to anything, and that he would fix the car up and deliver it in good condition.

Plaintiff would not agree to take the car, and on the day after the interview wrote Testard the following letter:

New Orleans, La., April 30, 1907.

"Mr. H. A. Testard, 341 St. Charles Street, City:

"Dear Sir—At the time of your visit yesterday to my office you spoke as though you thought you would get the automobile, which you desired to sell me, in good serviceable condition. In my letter of April 20, discontinuing further negotiations for it, I expressed the opinion that this could not be done, unless the car was practically rebuilt, and the trial given last Sunday does not materially change this view. While the car did not break down and stop running, the difficulty of handling it experienced by two expert drivers who were on the car convinced me that the car was not only not in good condition, but was, in my opinion, dangerous. Now, if you do succeed in getting the car in what you could guarantee as good serviceable condition, I will be glad to consider a proposition regarding it. You will please submit this proposition in writing, stating price, terms and character of guarantee you propose to give. Defects due to wearing out of machinery do not all develop at once on a single run, and so far every test I have seen made of the car has shown a defect. I would call your attention to the fact that while I am informed that you have withdrawn my notes

—183—

from the bank, neither the notes nor the balance due me have been returned, although some ten days have elapsed since I made the demand for them. I do not care to leave them on deposit against a possible future transaction, and I trust that you will at once comply with my request.

"Awaiting your immediate reply, I am,

"Yours very truly,

"Dict. Dr. C."

On the next day, April 1st, 1907, Testard wrote plaintiff as follows:

"Dr. J. E. Clemens, 120 Baronne Street, City:

"Dear Sir—I beg to inform you that your car is in my garage subject to your orders and at your risk, and that I feel that I have more than complied with my agreement.

"Respectfully,

(Signed) "A. TESTARD."

Plaintiff in his testimony denies the charge made in the defendant's answer, to the effect that the plaintiff had used the car continuously during one entire month, and that the broken-down condition of the car was caused by his inexperience in handling the car. Plaintiff says that the fact is, that he used the car but four times after the contract of sale was completed, and that on these occasions the car was always in charge of an expert chauffeur, sent by defendant, and that the only attempt that he, plaintiff, made to run the car was to lean over and guide it for a short distance on one occasion only. In this he is corroborated by the chauffeur.

We do not deem it necessary to review the testimony at great length. The record shows that five persons, exclusive of the defendant, had intimate knowledge of the autocar and the manner in which it operated, these being, Thurber, defendant's agent, who, with the defendant, conducted the negotiations with the plaintiff for the sale of the machine, and four chauffeurs or machinists, in the employ of the defendant, all of whom, at different times, were sent out in charge of the car by the defendant, with orders to run it and instruct plaintiff how to do so himself.

We have reviewed at some length the testimony of the

—184—

plaintiff, the burden of which goes to show that the car was not a serviceable one, and we find that this testimony, in the main, is strongly corroborated by the persons whom we have mentioned, then in the employ of Testard.

Thurber and Sutton significantly say that the car before and at the time of its sale to plaintiff was in good condition, but that subsequent to the sale nearly every attempt made to run th car by the defendant's experts proved fruitless.

Thurber's testimony is not given in a manner to carry conviction. He appears to have been a very unwilling witness, but even he, admits that the machine broke down repeatedly. Sutton says that the car was in poor condition, and when asked a question in reference to the mechanism controlling the speed of the car, he said that this part was in a terrible condition, and that the car was an unsafe one to operate.

A witness for the defense, Mr. Ginder Abbot, a man conceded to be an expert, in the course of his testimony, entered into a tchnical discussion of th many troubles which attended the attempts made to operate the machine, saying that they could be remedied, but that a car which gave as much trouble as this one did, was not in *good condition.*

Mr. Testard, the defendant, says that he did not guarantee this car for the reason that the best of them will go wrong at times, and can never be guaranteed.

Tester, the chauffeur, who handled the car oftenest, and who testified as an expert, when asked whether, with his knowledge of the conditions of the car it was possible to put it in good and serviceable condition, answered that he did not think it could *be kept in that condition for any length of time,* and further on he says that he told Mr. Testard that this car was in no condition to run.

Now it must be conceded that such a statement, coming from an expert and a man in the employ of Testard at the time of the sale of the machine, and the very man selected by Testard to operate the car for the purchaser, must have much weight in determining the issues of fact presented in this case.

Mr. Testard tells the Court that the machine was not guaranteed and, the point is endeavored to be made by defendant that because this car was second-hand and had been sold at a very low price comparatively, the purchaser could not expect any more than he got.

We cannot subscribe to the full extent of that view. True, a second-hand automobile will not give the service that a new one will, and the purchaser of such a machine cannot expect it, but when a second-hand machine is offered for sale and represented to be in *good condition,* this representation is tantamount to a guarantee that it will give some service.

The preponderance of the evidence in this case shows that the car was in *bad condition* before delivery, having been broken in defendant's garage by a negro employee, and was never fixed to run thereafter.

The defendant made every effort to put the car in a condition fit to operate, but in this he failed. He agreed, and did furnish, another machine to plaintiff for his use while the one sold him was being repaired at defendant's own cost. This circumstance, it appears to us, weakens materially the contention of the defendant that the machine was in good condition when delivered, and the sale therefore complete and binding.

If that was so, why do we find the defendant at work on the machine for days at a time, and incurring expense which he does not charge the plaintiff with?

The letters addressed to the plaintiff, written at a time not suspicious, tend to show the plaintiff's good faith beyond question, indicating a willingness to make some further arrangements whereby he could secure a better machine, but defendant insists he should take the autocar, from which he could get no service.

We are of opinion that the judgment of the District Court in favor of plaintiff, declaring the contract of sale to be null and void, and condemning the defendant to return to plaintiff the two notes for one hundred dollars $100) each and to pay and return to plaintiff the sum of two hundred dollars ($200), paid by plaintiff to defendant, is correct, and it is hereby affirmed.

Moore, J., dissents on the merits.

December 7, 1907.

## ON REHEARING.

Issues of fact alone are involved herein, and upon reconsideration of the case our previous opinion and decree is adhered to.

ESTOPINAL, J. After mature consideration of the brief

on rehearing filed by the learned counsel for the defendant, and a re-examination of the record and testimony, we have concluded to adhere to our former opinion and decree rendered in this case. The elimination from consideration of the testimony of the witness, Tester, whose testimony was inadvertently used and referred to in our former opinion, does not alter what we conceive to b the true state of facts connected with this controversy.

The question about which this Court was mainly concerned, and which prompted us in granting a rehearing in the case, was that of ''tender.''

The defendant's position is, that the contract of sale is not dissolved of right, but that the party complaining of the breach must either sue for its dissolution or demand a specific performance, and that plaintiff having chosen the first privilege, an action for dissolution, the obligation is not dissolved and is an enrorcible one until the judgment dissolving the contract becomes final, and that, therefore, the party complained against has a right to comply with the contract up to date of the filing of suit if not to the finality of the judgment.

Defendant relying upon the legal proposition advanced above, takes the position that having made a tender to the plaintiff before filing of suit, again during the trial below and again upon the argument in this Court, that plaintiff's demand should be rejected.

The record justifies the statement that the tender made on the trial below is supported by the testimony of Mr. Testard alone, and is simply a continuation of the statements and tenders made from time to time from the contract of sale. The car at no time gave satisfaction, and we have no reason to believe that the car at the time of the trial below was in any better condition than on the other several occasions when it was ''tried out,'' preliminary to tender, and besides, we do not find that there was any formal tender accompanied by costs presented to the lower Court for consideration and decision.

We do not question the legal proposition that even during trial defendant was yet in time to perform his contract.

The question here is one of fact, ''has defendant performed his contract, and has he made such a tender as this Court can pass upon?'' We think not.

Our previous opinion and decree remains undisturbed.

Moore, J., dissents.

March 8, 1909.

Writ refused by Supreme Court April 14, 1909.

————o————